Fred J. Munder, J.
This is a proceeding in eminent domain instituted by the petitioner, Union Free School District No. 3 of the Town of Huntington, Suffolk County, pursuant to chapter 190 of the Laws of 1927, as amended, for the purpose of acquiring a parcel of land comprising 14.4097 acres on the southwesterly side of Greenlawn Road for a junior high school site.
Title vested in the petitioner on April 1, 1964, as of which date record title was shown to have been in the names of Alice Glickman and Janet Barsky, the claimants appearing in this proceeding. The damage parcel was the northwest portion of a vacant piece of land totalling some 65 acres which, in February of 1963, Morton Glickman and Leonard Barsky, individually, had contracted to purchase from one John Filasky for development purposes. On May 9, 1963, title to the entire tract was taken in the name of Eastford Investors, Inc., which was described by Mr. Glickman as “an office corporation of our attorneys which we use and it acts as * * * an accommodation on their part to us ”. Eastford Investors, Inc., executed and delivered to Filasky a purchase-money mortgage in the sum of $265,200. On May 21, 1963, Eastford Investors, Inc., without consideration, conveyed the title to the J anal Development Corp., the corporation named as reputed owner of the condemned parcel in the original petition in this proceeding. Messrs. Glickman and Barsky, it was testified, are the “ principal owners” of Janal, and two other operating corporations. By deed (as corrected) of the same date, though not recorded until January of 1964, title to so much of the property as embraced the condemned parcel was conveyed without consid *191 eration by Janal to the individual claimants herein who are the wives of the corporation’s two principal stockholders.
Testimony on behalf of the claimants would indicate that it was originally intended to divide the G5-acre tract into 4 sections containing 57 one-acre minimum residential lots. In April of 1963 Glickman and Barsky, in the name of one of their other operating corporations, Galen Woods Estates, Inc., contracted with the firm of Fauser, Seitz & Associates, surveyors, for the preparation and filing of a subdivision map which won the preliminary approval of the Huntington Town Planning Board on September 18, 1963. Subsequently, it is claimed, as a result of the proposed condemnation, two sections, together comprising fourteen lots, had to be abandoned. They then proceeded with the planned development of the remaining sections (now designated 1 and 2) and posted performance bonds therefor. In addition to direct damages for the land actually taken and expenses actually incurred in the preliminary development thereof, there are claimed severance damages to the remaining sections as a result of the taking. In support of the severance damages allegedly sustained much evidence was adduced as to the additional prorata expense that would necessarily be incurred in improving the remaining acreage. The theory presented here is that Glickman and Barsky, being the principal owners of the corporation that originally held the legal title to the entire 65 acres, were the equitable owners of the corporate assets, including this real property; that the conveyance to their wives was tantamount to a conveyance to themselves; that the intended use of the entire parcel was for a housing development; and that they suffered severance damages when the 14-acre parcel was appropriated.
While it is only necessary that equitable, as opposed to legal, title be proved to authorize the recovery of an award in a condemnation proceeding (Vinciguerra v. State of New York, 22 A D 2d 93), the difficulty here is that such title is sought to be established in an entity other than the claimants. Even assuming that the “ principal owners ” of a corporation in this ease means the sole stockholders thereof, and there is no proof of that in the record, neither they nor the corporations are claimants in, or parties to, this proceeding. Neither of the actual claimants testified, nor did Barsky testify. There is absolutely no testimony to explain the transfer to the claimants or to show continuous and complete dominion over the land by Glickman and Barsky. While the record discloses that legal title to the entire tract at one time vested in one corporate owner con *192 trolled by Glickman and Bar sky, title to the condemned portion was conveyed out more than a month before the submission of the preliminary development map and nearly a year prior to the actual appropriation. Although no reason was given for the use of two corporations to hold the title and of two more to develop and sell the real property, and for the conveyance to the wives individually. It may be assumed that it was to limit liability and to take some tax advantage. To me it seems a bit anomalous to legally permit someone to eat his pie and have it too. Where one divides his activities and his title so as to reap a benefit by claiming them to be in separate entities, he ought not to be permitted to say that he equitably owns the whole in order to harvest the benefits of the unity of ownership rule when the land is taken by eminent domain. (Cf. Guptill Holding Corp. v. State of New York, 23 A D 2d 434.)
The claimants, though they are the wives of Glickman and Barsky, are not shown to have any but a vicarious interest through their husbands in the development corporations. There is no evidence that they had any interest in the remainder of the land, and consequently have suffered no severance damage. To treat the whole as a single tract would result in a windfall to individuals who have an interest in only the condemned parcel. (Cf. Kessler v. State of New York, 21 A D 2d 568.) “In the typical case * * * the question is only whether the claimant is entitled to a recovery”. (Vinciguerra v. State of New York, 22 A D 2d 93, 94, supra.)
Concededly the highest and best use to which the subject property could have been put under the existing zoning regulations (Residence B) was for the development of one-family residences on minimum one-acre lots. The correct rule to be applied under the prevailing conditions is to treat the property as a potential subdivision site, giving the acreage an increment in value because of its potential use. (Hewitt v. State of New York, 18 A D 2d 1128.) On the evidence before me I conclude that the fair market value of the land taken is $93,600, at the rate of $6,500 per acre. The petitioner’s appraiser, in suggesting a total award of $94,253, included in that amount $13,000 for severance damages, in the mistaken belief that title to the entire tract was in one ownership. There is no evidence that the claimants themselves incurred any expenses in conjunction with the originally proposed development of the condemned parcel as a part of the entire tract.